### One Hundred and Ninety-nine Barrels of Whiskey *v.* United States.

1. The forty-fifth section of the act of July 13, 1866 (14 Stat. 163), imposes upon a claimant of distilled spirits, seized for a violation of that section, the burden of proving that the requirements of law have been complied with; and this court, upon consideration of the evidence disclosed in the record, deems it insufficient, and affirms the decree of condemnation.
2. The rule in *The Diana,* 3 Wheat. 58, allowing interest upon the appraised value of the property from the date of the decree of condemnation in the District Court, approved, and applied to this case.

APPEAL from the Circuit Court of the United States for the Eastern District of Texas.

This was a libel against one hundred and ninety-nine barrels of

distilled spirits seized at Galveston, Texas, March 18, 1867, as forfeited to the United States.  The causes of forfeiture alleged are, —

1. That the spirits, being subject to the payment of internal revenue tax, were removed otherwise than into a bonded warehouse, without the payment of the tax.

2. That no lawful or genuine inspector's brand was ever put upon them, and they were removed for sale in fraud of the law, and with intent to evade the payment of the taxes thereon chargeable by law, and were fraudulently and illegally marked and branded.

3. That said barrels of distilled spirits, when found and seized by the collector of internal revenue, had never been inspected, gauged, proved, or marked, as required by law, and were fraudulently and illegally marked and branded.

To this libel a claim and answer were filed by Charles Andre, a resident of Matamoras, Mexico, in which he alleged that all the requirements of the laws of the United States relating to the spirits had been complied with previous to the seizure; that they had been duly proved and marked, gauged, and inspected, and the barrels properly branded by the lawful officers of the United States duly appointed for that purpose; and that all taxes required by law had been paid thereon.  He also stated that he purchased the spirits in open market at Matamoras, Mexico, in the regular course of business, between the 1st and 12th of February, 1867; that the same having been delivered to him in Mexico, he applied to the United States collector of duties for the district of Brazos de Santiago for permission to import them in the packages as purchased, which permission was granted; that he accordingly transported them from Matamoras to Brownsville, entered them at the custom-house of that district, and by bond secured the duties thereon according to law, and that he secured from the proper officers of the custom-house the usual certificate given in such cases, and sent the spirits forward to Indianola and Galveston for a market.

The evidence produced by the claimant shows that he entered the spirits at the custom-house upon his importation as of the growth, production, and manufacture of the United States, exported on board of certain vessels named, from New York and New Orleans, upon which no drawback, bounty or allowance

had been allowed, and reimported from Matamoras, Mexico, free; that he executed a bond to the United States for the sum of $73,000, with approved sureties, "conditioned that proper certificates to show that the articles were manufactured in the United States, and all taxes paid thereon, would be produced within six months thereafter, or that he would pay the customary custom-house duties required upon such articles of foreign manufacture;" that thereupon the proper landing certificate was issued, and the spirits were transferred from the ferry-boat in which they had been imported to the schooner "Island Belle," for transportation to Indianola and Galveston.

The evidence offered in support of the libel shows that Andre purchased the spirits at Matamoras, at the price of fifty-five cents per gallon; that they were shipped from New Orleans to Matamoras, June 20, 1866, on the British schooner "Village Belle," and, after being duly entered at the custom-house at Matamoras, were landed at that port. The district attorney of the United States then offered in evidence sworn examined copies of the original entry of the spirits by Andre at the Brownsville custom-house, together with sworn and examined copies of the bond given by Andre, and also of the certificates of the collectors of the ports of New York and New Orleans, upon which the bond was cancelled, and proved that the originals of the entry, bond, and certificates were on file at the custom-house in Brownsville, more than a hundred miles distant from Galveston. To the introduction of such copies Andre objected; but the objection was overruled, and they were admitted. The certificates showed shipments from New York to Matamoras, with no record of drawbacks, as follows:—

| | | | |
|---|---|---|---|
| Oct. 1, 1864, | B. G. H., | 20 | barrels. |
| Feb. 2, 1865, | S. Y., | 75 | „ |
| Feb. 10, 1865, | M. P., | 50 | „ |
| Jan. 14, 1865, | <S> | 50 | „ |
| March 11, 1865, | S. <A> | 100 | „ |

And from New Orleans to Matamoras,—

| | | |
|---|---|---|
| Feb. 4, 1865, | <P> | 5 barrels. |

These shipments all corresponded with the specifications in the entry, except that marked S. <A>. In the entry this

appeared to have been an exportation in the schooner " Brazos," but the certificate showed that it was in the bark " Mary Schofield." To explain this discrepancy, Andre made affidavit that in his entry he gave the name of the schooner inadvertently, the fact being that the exportation was in the bark. It is further proved, that, when the spirits were seized in Galveston, the barrels were carefully examined; that many of them appeared to be old molasses barrels; that many had on them the inspection marks of revenue inspectors at New Orleans and at Cincinnati; that the inspection marks, if ever there were any on some of the barrels, had been covered with dirt, and so obscured as to become illegible, but that most of the barrels contained the inspection marks, " manufactured prior to 1st September, 1866." Subsequently, when the barrels were taken out of the warehouse and delivered to the claimant, by order of the court, he affixed a new brand on the head of each barrel, to do which he had to wash the heads; and all but fifteen or twenty barrels were found to have been branded " tax paid."

Pending the suit, the property was appraised and delivered to the claimant, in accordance with the practice in such cases, upon the execution of a bond with sureties, conditioned to abide and answer the decree of the court in the premises.

Upon this testimony the District Court gave a decree of forfeiture July 21, 1868, and adjudged that the claimant pay into the registry of the court the appraised value of the spirits with interest from that date, and, in default, that execution issue against him and his sureties. From that decree an appeal was taken to the Circuit Court, where a similar decree having been entered May 27, 1874, the claimant appealed here.

*Mr. J. M. Burroughs* for the appellant.

*Mr. Assistant Attorney-General Smith* for the appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the Court.

The first ground of forfeiture in this case is based upon sect. 45 of the act of July 13, 1866, 14 Stat. 163, which provides, that, upon seizures made for the causes there stated, the burden of proof is on the claimant to show that the require-

ments of the law have been complied with. It is contended, however, that the passage of the spirits through the custom-house, even though it be duty free, establishes a *prima facie* case in favor of the claimant, and throws the burden of proof upon the United States. Without stopping to inquire whether this is so or not, it is sufficient to say that as between these parties the *prima facie* case made in this way has been completely overcome, and the burden again fairly cast upon the claimant.

The *prima facie* case depends upon sustaining the statement made by Andre in his entry, that the identical spirits seized were exported from New York and New Orleans to Matamoras in the vessels named, without drawback for taxes paid. If this is disproved, the *prima facie* case as made has been met, and the burden placed where it was before.

The certificates of exportation furnished by Andre to the collector in support of the entry do not identify the spirits exported with those seized, any further than by showing that the marks on the barrels exported correspond with those on the barrels seized. The shipments were all made late in 1864 and early in 1865, and from New York, except five barrels from New Orleans. Against this it appears that nearly or quite all the barrels when seized had upon them the inspection marks, "manufactured prior to 1st September, 1866," though the law requiring such marks was not passed until July 13, 1866; that many of the barrels appeared to be old molasses barrels; that many had upon them the inspection marks of revenue inspectors at New Orleans and at Cincinnati; that one witness has sworn that the spirits were actually exported from New Orleans to Matamoras on the British schooner "Village Belle," June 20, 1866; and that Andre purchased them at the price of fifty-five cents per gallon.

With this evidence before us, it is impossible to believe that the spirits mentioned in the several certificates of exportation are the same as those that were seized. True, the inspection mark as to the date of the manufacture is as much inconsistent with an exportation from New Orleans June 20, as with the exportation as claimed; but it shows that, if the statements of Andre are true, the inspection marks have been tampered

with, and that he may properly be called upon for explanations which he has not given.

The evidence, therefore, as we think, clearly justified a decree of forfeiture upon the first ground alleged in the libel. It is true that the inspection marks, if spurious, may have been placed on the barrels while they were in Mexico, and that, so long as the spirits remained in Mexico, they could not be seized for any violation of law previous to their removal; but it is equally true, that, although there could perhaps be no forfeiture for spurious brands affixed in Mexico, such brands may furnish evidence to be considered in determining whether the goods were subject to seizure for what had transpired in respect to them previous to their removal, and, that when brought again into the United States duty free, they were subject to seizure for any cause that existed before their exportation.

In this view of the case, it is unnecessary to consider the objections raised to a recovery upon any of the other charges in the libel.

The sworn and examined copies of the papers on file in the custom-house were admissible in evidence. So far as the bond and entry are concerned, further proof as to them by the United States was unnecessary, because they had been already sufficiently established by the testimony in behalf of the complainant. The cancellation certificates were admissible as declarations by the complainant in connection with the entry and the *prima facie* case he insists he had made, and they were required by law to be taken and filed because they were the identical papers Andre was to produce and deliver to the collector in performance of the conditions of his bond. 1 Stat. 663, sect. 28.

The decree of condemnation was rendered in the District Court July 21, 1868, and under the rule in *The Diana*, 3 Wheat. 58, the interest upon the appraised value was properly calculated and adjudged from that date.

*Decree affirmed.*

NOTE. — In *One Hundred Barrels of Whiskey* v. *United States*, which was argued at the same time and by the same counsel as was the preceding case, MR. CHIEF JUSTICE WAITE, in delivering the opinion of the court, remarked : —

This case differs from the preceding one only in the fact that the barrels were

seized at Indianola instead of Galveston, and in that the marshal, instead of delivering to the claimant the whole one hundred barrels upon the order of delivery, handed over only fifty-five, and paid him the proceeds of the sale of the remaining forty-five barrels. As these proceeds amounted to more than the appraised value of the property, for which alone the decree below was rendered, we cannot see how the claimant can now object, because he did not receive the spirits.

For the reasons given in the other case, the decree in this is        *Affirmed*